INHABITANTS OF HOULTON *versus* INHABITANTS OF LUBEC.

The Act of Feb'y 11, 1794, respecting support of paupers, continued in force until 1821.

Under that Act, no illegitimate child could have a *derivative* settlement, unless the mother herself, at the time of its birth had a settlement.

No settlement acquired by the mother, after that time, could be imparted to such child.

Under that Act no residence, short of ten years, in a town could give a settlement there.

ON REPORT from *Nisi Prius*, TENNEY, J., presiding.

ASSUMPSIT to recover for expenses incurred for pauper supplies.

The case was submitted upon testimony, for a nonsuit or default as the facts and the law require. The facts, as found by the Court, are reported in the opinion.

*Tabor*, for the plaintiffs.

*J. C. Talbot, jr.* for the defendants.

HATHAWAY, J. — Assumpsit for necessary supplies furnished two pauper children of Minsdell Tyrrell, wife of William Tyrrell. By the deposition of David E. Corliss, in the case, it appears, that he went to Narraguagus, now the town of Cherryfield, where he lived about two years, and while there in March, 1804, he, having a lawful wife then living in New Hampshire, married Polly Tucker; that he next moved to Lubec, then called " Quoddy," where they resided until April, 1824, and then moved to New Brunswick. During their residence in Lubec, in 1814 or 1815, she became the mother of a daughter named Minsdell, who continued to live with them till her mother died in 1826, and afterwards with Corliss till 1831, when she married William Tyrrell, a foreigner and soldier in the United States' service, stationed at Hancock barracks in Houlton, and she subsequently became the mother of the paupers, as appears by Joseph M. Spencer's deposition in the case.

Corliss having a lawful wife living, at the time of his marriage with Polly Tucker, her daughter Minsdell was illegitimate, and the plaintiffs contend that the paupers, through their mother Minsdell, derived a settlement in Lubec from their grandmother Polly Tucker who, they alleged, had a legal settlement there, at the time of Minsdell's birth, in 1814 or 1815.

The question of her settlement must be determined according to the provisions of the statute of Massachusetts, passed Feb. 11, 1794, c. 34, which was the law in force upon that subject from the time of its enactment until the passage of the law of this State, upon the same subject, in 1821, c. 122.

By the second section of the statute it is provided " that illegitimate children shall follow and have the settlement of

their mother, at the time of birth, if any she shall then have within the Commonwealth, but that neither legitimate or illegitimate children shall gain a settlement by birth in the places where they may be born, if neither of their parents shall then have any settlement there."

If Polly Tucker had gained a settlement in Lubec, when her daughter Minsdell was born, it was gained either by the tenth or twelfth mode prescribed by the statute. The twelfth mode requires that a person gaining a settlement by residence should be a citizen of the age of twenty-one years and should reside in the town for the space of ten years together, &c., but it is not proved, that she resided there ten years prior to the birth of Minsdell, and the case furnishes no evidence concerning her age. She did not therefore gain a settlement by the twelfth mode. But it is said in argument that the town of Lubec was not incorporated until 1811, and that she was a resident there at the time of its incorporation, and it appears by the Act of incorporation, passed June 21, 1811, that the *whole territory*, subsequently constituting the town of Lubec, was embraced in, and was part of the town of Eastport, which, by that Act, was divided, and a part thereof incorporated into the town of Lubec. These facts would render her case subject to the provisions of the *tenth mode* of gaining a settlement, where a new town is incorporated, composed of part of an old incorporated town, but they do not aid the plaintiffs in establishing her settlement there, for the same means and qualifications, and the same time of residence are required by the tenth mode as by the twelfth.

It may be true, that Polly acquired a settlement by her subsequent residence in Lubec, but that would not affect the settlement of her daughter, for an illegitimate child cannot gain a new derivative settlement under the mother, but retains that which the mother had at its birth. *Biddeford* v. *Saco*, 7 Maine, 270; *Fayette* v. *Leeds*, 10 Maine, 409.

The plaintiffs having failed to show that the paupers had a settlement in Lubec, a nonsuit must be entered.

TENNEY, RICE and APPLETON, J. J., concurred.