# CHARLESTON.

CORNWELL, EXECUTOR V. MOUNT MORRIS METHODIST EPISCOPAL
CHURCH *et als.*

Submitted March 5, 1912.   Decided October 28, 1913.

1.  WILLS—*Construction—Extraneous Evidence.*

A provision in a will, giving the interest on a certain fund "to the Foreign Missionary Society to be sent directly to the Board", read in the light of extraneous evidence establishing the existence of a foreign corporation under the name, "The Board of Foreign Missions of the Methodist Episcopal Church", the non-existence of any other missionary society of said church governed by a board, a long, close and active affiliation of the testatrix with the Methodist Episcopal Church, her work as an evangelist in that church and her active support of its foreign missionary work, is interpreted as giving the interest on said fund to said Board of Foreign Missions of the Methodist Episcopal Church.   (p. 97).

2.  SAME—*Construction—Limited Bequest of Interest.*

A bequest of the interest on a fund without limit as to time is, in law, a bequest of the fund itself.   (p. 101).

3.  WILLS—*Construction—Residuary Bequest.*

A gift by will of the remainder of the interest on a certain fund, after appropriation of portions thereof to two other purposes which fail for indefiniteness and uncertainty, is a residuary bequest of the interest on such fund and carries with it the void legacies given out of the same.   (p. 10).

4.  SAME.

In a will bequeathing a fund to the Board of Foreign Missions of the Methodist Episcopal Church, in the manner and form above shown, a subsequent clause giving the remainder of another sum of $1,000.00 to the "Missionary Society", read in connection with the previous gift to the Board of Foreign Missions and the extraneous evidence in the case, is interpreted as giving said remainder to the Board of Foreign Missions of the Methodist Episcopal Church; and, the first gift of $100.00 out of said fund having failed, the entire fund of $1,000.00 goes to said Board of Foreign Missions.   (p. 102).

5.  SAME—*Bill of Conformity—Scope of Inquiry.*

On a bill of conformity, filed by the executor of a will disposing of both real and personal property, but giving him no interest in the real estate nor power of disposition thereof nor charging him with any duty respecting the same, the court can decide nothing as to the validity or interpretation of the clause disposing of the real estate.   (p. 103).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Barbour County.

A bill was filed by one Cornwell, executor, etc., for instructions as to his duties, and from the decree the Mount Morris Methodist Episcopal Church and another appeal.

*Reversed in part. Affirmed in part.*

*Samuel V. Woods* and *J. Hop Woods,* for appellants.

*William T. George,* for appellee.

Poffenbarger, President:

On a bill filed by the executor of the last will and testament of Appolonia Walter, for advice and instruction as to his duties, in view of controversies and disputes as to the validity of certain provisions of the will, the court below adjudged and decreed all of its provisions to be void except one requiring the erection of a monument at her grave; and the executor and two of the beneficiaries under the will, the Board of Foreign Missions of the Methodist Episcopal Church and the West Virginia Wesleyan College at Buckhannon, have appealed.

The decree recites two grounds of invalidity, uncertainty as to beneficiaries and contravention of public policy. As to two of the beneficiaries, the Mount Morris Methodist Episcopal Church and the Pleasant Valley Methodist Episcopal Church, these reasons, in view of numerous decisions of this Court, amply justify the decree, and they have not appealed from it. As to the Board of Foreign Missions of the Methodist Episcopal Church, a corporation organized under the laws of the state of New York, the language of the will, in the two provisions made for it, is indefinite, but the West Virginia Wesleyan College at Buckhannon, another corporation, is designated by its full corporate name. As to the latter, there is no occasion for resort to extraneous evidence for the purpose of identification. As to the former, there is such occasion, and the court seems to have taken the view that the evidence relied upon is insufficient.

One provision gives to the Board of Foreign Missions part

of the interest on a fund of $500.00 in the following terms: "That is, the interest is to go to the Foreign Missionary Society to be sent directly to the Board." After having provided a gift of $100.00 to the Pleasant Valley Methodist Episcopal Church out of a fund of $1,000.00, described as coal money, the testatrix made this further provision: "The remainder of the $1,000.00 to go to the Missionary Society." The extraneous evidence establishes a long and intimate affiliation of the testatrix with the Methodist Episcopal Church, and provisions for two congregations thereof in her will evince great interest in its purposes and welfare. She had been a member of the church for a long time and worked among its congregations as an evangelist. Though not ordained or licensed to preach, nor recognized as a minister by the conference, she carried on a work of preaching and exhortation among its congregations. She subscribed for and read papers and periodicals published in the interest of the church and its work, and papers published primarily in the interest of its missionary work. An active worker in the Methodist Church and a reader of its literature and books, she must necessarily have known something, and perhaps a great deal, of its organization and system of conducting missionary work. She evidently knew its missionary work was carried on or conducted under the supervision of a board, for she referred to it in her will. She seems also to have known this board was the custodian of funds contributed for the church's missionary work, for she provided that the interest on the $500.00 fund should be sent directly to the board. The Board of Foreign Missions of the Methodist Episcopal Church is a corporation legally integrated with the church and closely affiliated with it in its organization and purposes. It governs and controls a society known as the missionary society, engaged in the work of foreign missions. It is the only purely missionary society of the church, national in its organization and scope, that is governed by a board. There is a Woman's Foreign Missionary Society, incorporated under the laws of the state of New York, but it is not governed by a board. Its governing or managing body is known as the General Executive Committee. All this the testatrix no doubt knew, and

she described the object of her bounty as a Foreign Missionary Society, having a board, saying the interest on the $500.00 fund is to go to the Foreign Missionary Society and to be paid directly to the board. No other organization engaged in the work of the church to which she belonged answers this description. The other bequest of the remainder of the $1,-000.00 fund goes to what she calls the Missionary Society. Broadly speaking, as she did, her church had but one real Missionary Society, the great society, represented by the Board of Foreign Missions, authorized by law in express terms, to receive for its purposes, devises and bequests of real and personal property and hold real estate yielding an annual income of $250,000.00, and placed by the laws of its organization directly under the control of the Bishops and other authorities of the church; and nothing in her will or elsewhere indicates any affiliation on her part with the Woman's Foreign Missionary Society, a voluntary incorporated society, not required by the law of its organization to maintain any certain relation to the church. Her designation of the donee of this gift as "the Missionary Society" tends strongly to sustain this view. Any intention on her part to provide in her will for two missionary societies would necessarily have suggested at once the necessity of more specific designations of them as a means of distinguishing the one from the other. The use of the definite article in the bestowal of the gift is suggestive of some one thing in the mind of the testatrix as a thing previously mentioned in the will. In seeking the intent, the instrument is to be read as a whole and the relation of its parts considered. She had previously mentioned the Board of Foreign Missions in such terms as leave no doubt as to her meaning, and this gift to the Missionary Society, in a subsequent clause, is at least suggestive of intent to make it to the same missionary society, the one governed by the Board of Foreign Missions. Aided by other circumstances already adverted to, the terms used in these two provisions evince clear and plain intent to make both gifts to the same donee.

Both the admissibility and the sufficiency of the extraneous evidence herein set out to identify the objects of these two bequests are affirmed by *Ross's Exr* v. *Kiger*, 42 W. Va. 402;

*University* v. *Tucker,* 31 W. Va. 621; and *Wilson* v. *Perry,* 29 W. Va. 169. Being a foreign corporation, authorized by its charter to take and hold real and personal property, the Board of Foreign Missions of the Methodist Episcopal Church is not denied the right to take this bequest by the Constitution of this state, any of its statutes or its public policy. *Ross' Exr.* v. *Kiger,* cited; *University* v. *Tucker,* cited; *Wilson* v. *Perry,* cited.

An effort on the part of the testatrix to make the $500.00 fund subserve three different purposes, two of which fail, aid to the Mount Morris Methodist Episcopal Church and maintenance of the graves of the Walter family, necessitates inquiry as to whether the Board of Foreign Missions, although sufficiently identified, can take this fund. Lack of certainty and definiteness as to the beneficiaries vitiates the first two of them. *Pack* v. *Shanklin,* 43 W. Va. 304; *Wilson* v. *Perry,* cited; *Knox* v. *Knox,* 9 W. Va. 124. The will appoints four trustees to take charge of this fund and gives the interest thereon to the Mount Morris Church for use in keeping in good condition the graves of the Walter family, the remainder to be used for repairs to the church or the pastor's salary, according to the will and discretion of the trustees, provided the church shall remain in what was known as the Knottsville circuit. In case of its separation from the said circuit, then it was the desire of the testatrix that the graves should be kept in repair and the residue go to the Foreign Missionary Society. Two of the three purposes to which the testatrix intended the interest on the $500.00 fund to go having failed, it becomes necessary to determine whether the bequest of interest on that fund to the Missionary Society takes the whole of the interest thereon, under the rule or principle which gives void or lapsed legacies to the beneficiary of a residuary clause of a will. Had the other two purposes been capable of execution, the amount to go to the Missionary Society would have been uncertain, in the general sense of the term, but legally only contingent. It was dependent, first, upon the severance of the Mount Morris Church from the Knottsville circuit, secondly, upon the necessity of the use of the whole thereof for maintenance of the graves, and, thirdly,

upon the discretion or judgment of the trustees as to the amount to be appropriated to the maintenance of the graves. This clause deals with a particular fund and uses a term which applied to an entire estate would make it residuary, for it says the remainder is to go to the Foreign Missionary Society. A residuary bequest as to personal estate carries not only everything not otherwise disposed of, but everything which turns out not to have been eventually disposed of, as void and lapsed legacies. *Prison Ass'n* v. *Russell,* 103 Va. 563; *Gallagher* v. *Rowan,* 86 Va. 823; 2 Redf. Wills, p. 115; *Reynolds* v. *Kortright,* 18 Beav. 427; *Dawson* v. *Clark,* 15 Ves. 409; *Cambridge* v. *Rous,* 8 Ves. 14; *Bland* v. *Lamb,* 5 Madd. 412. Obviously this construction does violence to the intention of the testator in the instances in which specific bequests or legacies are void, for the testator intended them to be effective, but, nevertheless, the gift of the residue is positive, definite and controlling. It takes all that is not otherwise disposed of. The rule rests upon the words of the will rather than the expressed intention of the testator. *Bland* v. *Lamb,* cited. Void bequests are treated as nullities and the valid ones given effect. As to the void bequests, the testator has not legally expressed his intention, but, in the residuary clause, he has legally expressed it, wherefore it is controlling and carries the void or lapsed legacies, unless a contrary intention is expressed in some other portion of the will. In this instance, the testatrix deals with a particular fund, the purposes of which are in two instances void, and to the third she gives the remainder of the interest on the fund. The word "remainder" aptly and technically expresses intent to give a residue, all of the interest on that fund not used for the other two purposes. They do not consume any of it and there is nothing in the will indicative of intent that these portions should go to any other purpose than that declared as to the remainder. As such a clause applied to an entire estate would carry void legacies, no reason is perceived why it does not do so when applied to a particular fund. The principle is exactly the same. Our conclusion, therefore, is that the Board of Foreign Missions takes the entire interest in the $500.00 fund. An absolute gift of the rents and profits or

use of land carries title to the land itself.   Page on Wills, secs. 491, 561; *Baker* v. *Scott,* 62 Ill. 86; *Bowen* v. *Swander,* 121 Ind. 164; *Hunt* v. *Williams,* 126 Ind. 493; *Earle* v. *Rowe,* 35 Me. 413; *Cassily* v. *Meyer,* 4 Md. 1; *France's Estate,* 75 Pa. St. 220; *Traphagen* v. *Levy,* 45 N. J. Eq. 448; *Baines* v. *Dixon,* 1 Ves. 42; Jarman on Wills (6th Ed.) p. 1295.   The gift of the produce of a fund without limit as to time is a gift of the fund.   *Cassily* v. *Meyer,* 4 Md. 1; *Manning* v. *Craig,* 3 Green (N. J.) 436.

Under this rule of construction, the Board of Foreign Missions takes the whole of the $1,000.00 fund, called coal money, the bequest of $100.00 out of it to the Pleasant Valley Church having failed, and the terms of the gift to the board being residuary in form and effect.   The language of the will is "The remainder of the $1,000.00 to go to the Missionary Society".   In case of deficiency of other estate, the medical, nursing and funeral expense of the testatrix and the cost of her monument were charged upon this fund, but the bill shows assets from other sources applicable to the payment of these charges and sufficient to cover them.

The $1,000.00 fund, described in the will as coal money, $100.00 of which was given to Pleasant Valley Church and the remainder to the Missionary Society, was invested by the testatrix in her lifetime in two interest bearing bonds of the city of Morgantown.   It had not been designated in the bank in which it was deposited as coal money.   Nothing there indicated the source from which it had been derived, but the fact is it had been largely, if not entirely, derived from the sale of coal in land.   After the bonds had been purchased, they were left in the bank, marked as the property of the testatrix. Thus the form of the fund was changed from a deposit in the bank to an investment in bonds, and, on this change of form, there is based a claim of ademption, or destruction of the legacy, but the authorities do not sustain this position.   The fund had not ceased to exist, nor in any way been destroyed or lost at the date of the death of the testatrix.   It remained in an altered form, and the legacy had not been satisfied by any advancement in her lifetime.   That such a change does not work an ademption of the legacy is well settled by authority.

Page on Wills, secs. 779, 781; *Prendergast* v. *Walsh,* (N. J.) 42 Atl. 1049.

Under principles declared in *Couch* ·v. *Eastham,* 29 W. Va. 784, the two legacies to the Board of Foreign Missions bear interest from the expiration of one year after the date of the death of the testatrix until paid.

Owning one-third of a tract of land containing 175 acres, the testatrix devised her undivided interest therein to the West Virginia Wesleyan College at Buckhannon by its corporate name. In this provision, she dealt with the land and the timber thereon as two separate subjects, but it appears from the pleadings that the timber was not severed in her lifetime and remains on the land. As to this devise, the executor is charged with no duty whatever. He files his bill for advice and instruction as to his duties respecting the personal estate, disposed of by the will, but sets forth in his bill all the provisions of the instrument, and makes it an exhibit therewith. His bill discloses no interest or duty respecting the real estate, nor does he specifically pray for any relief concerning it, although he makes the West Virginia Wesleyan College a party. The bill defines the scope of the suit, and it is necessarily limited to the interest of the plaintiff. Under its prayer for general relief, he can have only such relief as the matters of fact set up in his bill entitle him to. As he has no interest whatever in the land, nor any duty to perform respecting it, nothing could be decided for him concerning the devise of the property. If the heirs see fit to contest the validity of that clause of the will, the question is one for settlement between them and the college, in which the executor has no interest. By their answer, the brother and sister claim nothing more than a life estate in the land, and concede to the college the remainder in fee. They pray for no relief against the college, nor does the college by its answer ask any relief against them. Their controversy, if they have any, is in no sense germane to the subject matter of the bill. Jurisdiction in equity to construe wills is limited and special, and will be exercised only as incident to general equity jurisdiction, and then, in a particular case, only to the extent of determining whether or not the relief sought can be granted. *Martin* v. *Martin,* 52 W. Va.

381; Pom. Eq. Jur., secs. 1156, 1157.    As the executor discloses no interest in the land nor any responsibility concerning it, he has no ground for relief as to it, and the court could not construe the clause of the will devising the land at his instance.    As to him, it could go no farther than so to construe it as to put him out of court, as regards the land, by a declaration of his lack of interest.    Whether by proper prayers for relief and process upon their answers, the brother and sister and the Wesleyan college could have brought this matter within the jurisdiction of the court on this bill, it is unnecessary to say, for they have not asked relief against each other, nor treated their answers as original bills by taking out process thereon or otherwise.    These views result in the conclusion that the court had no jurisdiction nor power to declare this provision of the will void.

For the reasons stated, the decree complained of, in so far as it declares the bequests to the Foreign Missionary Society and the Missionary Society and the devise to the West Virginia Wesleyan College void, and the will itself to be inoperative and void, except to the extent that it appoints Charles M. Cornwell as executor and directs him, out of the estate of the testatrix, to provide her last resting place with a suitable monument, at a cost of not less than $50.00, will be reversed, annulled and set aside, and in all other respects affirmed; and it will be here decreed that the will, properly interpreted and construed, gives the $500.00 fund mentioned in the will and also the fund of $1,000.00 invested in the Morgantown bonds to the Board of Foreign Missions of the Methodist Episcopal Church, with interest on each from the expiration of one year after the date of the death of the testatrix until paid, and that the devise to the West Virginia Wesleyan College at Buckhannon be dismissed out of this suit as a matter not involved in the pleadings.    Costs in this Court will be decreed to the appellants as the parties substantially prevailing.

*Reversed in part.    Affirmed in part.*